Staples, J.
The principle of dedication by the act of the owner of land is now almost universally recognized as a paid of the common law in this country. It is defined to be “the act of devoting or giving property for some proper object, and in such manner as to conclude the owner.” To constitute a dedication there must be an intention to appropriate the land for the use and benefit of the public. The intention, the animus dedieandi, is the vital principle of the doctrine of dedication. The acts and declarations of the landowner indicating such intention, must be unmistakeable in their purpose, and decisive in their character, to have that effect. Washburn on Easements and Servitudes, 134; Irwin v. Dixion, 9 How. U. S. R. 10, 30. In Barraclough v. Johnson, 35 Eng. C. L. R. 337, it was said, “ The very term dedication shews that the intent is material. There cannot be such a thing as turning land into a road without an intention on the *838 owner’s part.” This intent may he presumed from circumstances connected with a long and uninterrnpted user by the public. But such user is only important as indicating a purpose to make the donation. And this presumption may be rebutted by circumstances shewing that an aj>propriation of the property to the use of the public was not intended.
In Poole v. Huskinson, 11 Mees. & Welsb. R. 827, it was held that the user of a way by the public is at best only evidence of intention on the part of the owner of land to dedicate it, and that a single act of interruption- by the owner is of much more weight upon the question of intention, than many acts of enjoyment on the part of the public: the use, without the intention to dedicate as a public way, not being a dedication.
In Roberts v. Karr, 1 Camp. R. 262 note b, it appearing that a bar had been placed across a street to prevent the passage of carriages, but was soon torn down, and thereafter the street used as a thoroughfare, the court decided that putting up the bar rebutted the presumption of dedication. And so where a gate had been originally across the way, but for twelve years had not been there, the jury, under the direction of tho judge, found that there was no dedication, and the court of King’s Bench refused to disturb the verdict., Lethridge v. Winter, 1 Camp. R. 263 note.
In Irwin v. Dixion, the court held that the presumption arising from thirty years’ use of the properly by the public was rebutted by the fact that the owner repaired the property, paid the taxes assessed, and exercised other acts of ownership over it.
In Kelly’s case, 8 Gratt. 632, Judge Leigh said—-“A permission to pass over land may prove an intention to dedicate, or a mere license, revocable at the will of the owmer; and we think that the mere permission to pass over land ought in this State to be regarded, as a *839 license. For why shall we infer that an individual makes a gift of his property to the public from an equivocal act, which equally proves an intention to grant a mere license?”
These, and other cases which might be mentioned, establish the proposition, that to bind the land-owner the dedication must be openly made, and with deliberate purpose; and that the presumption arising from a long-continued and uninterrupted enjoyment of the easement by the public, will be negatived by the exercise of acts of ownership over the property, or other circumstances inconsistent with the supposition that a dedication was intended.
It is well settled, there must be not only a dedication by the owner, but an acceptance by the public. "Whether some act on the part of the authorities charged with the control or repair of the highway, is necessary to constitute an acceptance, or whether it may be effected by a mere user of the property, is a question upon which the authorities are not agreed.
In Kelly’s case, it was held, with regard to county roads, there must be an acceptance by the County court upon its records; but it was said this principle did not apply to streets and allies in town. As to them, the acts of the corporation officers may have the same effect as the acts of the County court.
It may be safely assumed, that in this State there may be a valid acceptance of an easement in a town without any distinct act of recognition by the corporate authorities of such town. The mere user, however, by the public of the locus in quo, will not of itself constitute an acceptance, without regard to the character of the use, and the circumstances and length of time under which it was claimed and enjoyed. Where property in a town is set apart for public use, and is enjoyed as such, and private and public rights acquired with reference to it and to its enjoyment, the law pre *840 sumes such acceptance on the part of the public as will ojierate an estoppel in pais, and preclude the owner from revoking the dedication. The case of Skeen v. Lynch, 1 Rob. R. 186, substantially affirms this doctrine. There, a right in a strip of ground along the margin of Jackson’s river, was claimed by the citizens of Covington as resulting from express dedication; but no act of acceptance on the part of the officers of the town was shewn or pretended. Judge Allen said, if •the easement was granted, it was for the benefit of the public, and in such case the owner is precluded from re-asserting any right over the land, so long as it remains in public use, although there may be no grantee in existence capable of taking. “ The use of properly by the public, with the consent of the owner, will, under peculiar circumstances, justify the presumption of dedication to the public, provided the use has continued so long that private rights and public convenience might be materially affected by an interruption of the enjoyment.”
ÍTumerous other eases maintain the principle that the owner is estopped to assert there has been no formal acceptance, where the public, relying upon the manifest intent of the party to dedicate the property, have entered into the occupation of it in such manner as renders it unjust and improper to reclaim it. State v. Nash, 6 Verm. R. 355; Badeau v. Mead & al., 14 Barb. R. 328; Cincinnati v. White’s lessee, 6 Peters’ U. S. R. 431.
„ "Where no public or private interests have been acquired upon the faith of the supposed dedication, the mere user, by the public, of the supposed street or alley, although long continued, should be regarded as a mere license, revocable at the pleasure of the owner; unless, indeed, there be evidence of an express dedication; or unless, in connection with such long-continued user,.the way has been, by the proper town authority, *841 recognized as a street, so as to give notice that a claim to it as an easement was asserted.
In the case under consideration, the indictment--charges the defendant with placing obstructions in and upon Plume street. The pretension of the prosecution was based upon the idea of a dedication of the locus in quo to the public. To establish this, the Commonwealth proved that, for several years prior to 1881, the lot in question, with other adjoining lots, was vacant and unenclosed; that it was in the same condition in 1835 and in 1862; and whenever unenclosed, as far hack as 1824, it was used as a way for persons, horses and carriages; and a number of persons, living and dead, believed the lot to he a street. This is the Commonwealth’s evidence to establish the dedication.
To what extent the lot was used by the public, does not appear. Nor is it shown that property was purchased, or other rights acquired by individuals, or money expended by the city of Norfolk, upon the faith of the presumed dedication.
On the other hand, the defendant proved that the lot was under enclosure in 1830 and 1832, and from 1840 to the year 1862, continuously; that the taxes assessed thereon have been regularly paid since 1819 by the defendant and those under whom he claims.
In the year 1862 he left the State; hut when 'he returned does not appear, except that, in the year 1870, he placed the posts and rails across the lot, as set forth in the second count in the indictment. During all this time, from 1840 to 1862, a period of twenty-two years, no complaint was made by the city of Norfolk, or any of its citizens, that the defendant, or those under whom lie claimed, by these enclosures was violating the rights of the corporation or any individual whatever. In 1849, at the time Plume street was labelled along with the other streets, as is claimed, this lot was enclosed, and was so enclosed when purchased by the defendant; *842 and in 1851 and 1852 he erected buildings thereon, without a word of opposition from any quarter. Thedefendant ascertaining, by an examination of the records, that the lot had passed by deeds of conveyance and under decrees of the court from owner to owner, and had been regularly assessed with taxes, as private property ; that it was enclosed as private property, and had been for many years; might justly and reasonably conclude, when he made the purchase, that no claim was asserted to a right of way over it; or if there ever had been such claim, it was then abandoned. If there ever had been, originally, a dedication of the property, it is a question worthy of consideration, whether the public, under the circumstances, would not be precluded from asserting it against the defendant. Having acquiesced, without objection, in the enclosures of the lot and the exercise of other acts of ownership on the • part of those claiming title, and thus apparently abandoned all claim to the easement, and thereby induced the defendant to expend money upon the faith of such supposed abandonment, it would be gross injustice for the city of Norfolk, or its inhabitants, now to attempt to enforce such demand.
The record states that, whenever unenclosed, the lot was used as a passage way for persons, horses and vehicles. “Whenever unenclosed.”. This fact alone clearly shews that the user was a mere license to pass over the land, and was so regarded by the public.
The absence of the defendant in 1862, the existence of war, the occupation of Norfolk by Federal troops, and the unsettled condition of the country ever since, are circumstances sufficient of themselves to explain tjie reason of the failure to enclose the lot since that year, without resorting to the violent and unjustifiable presumption that the defendant thereby intended to dedicate it to the city of Norfolk.
In this view, it becomes unnecessary to discuss the *843 question of acceptance, or that of the identity of Plume street, or how far it has been recognized as a public street, as described in the indictment. The facts proved are wholly incompatible with the supposition that the lot in question has been dedicated to the public. On the contrary, they clearly show that no such dedication was ever made, or in the contemplation of the owners; and the court below should so have instructed the jury. The instruction given to the jury was a plain intimation that they might presume a dedication from the facts and circumstances proved; and, as such, was clearly erroneous.
During the trial, the Commonwealth offered in evidence a “paper ”purporting to be a map of the borough of Norfolk, made by John Ridley, the city surveyor in 1884 and ’5, and which was found in the office of the register of said city, in a book labelled “ plans and charts.” To the introduction of this map the defendant objected; but the court overruled the objection, and admitted the evidence; and the defendant excepted.
I think the court erred in overruling the objection. It does not appear that this map was made by direction of the city authorities; or that it was ever, in any manner, recognized by them as an official document; or that it was generally recognized and used by the inhabitants of said city in the surveys of streets or lots of the town. Upon its face it purports to be a mere “plan of the city of Noi’folk;” probably of streets-thereafter to be established; but never acted on or approved by the corporate authorities. On the other-hand, it was in proof that another “ map,” made in 1802 by the surveyor of the borough of Norfolk, is-the only official map made by order of the corporation court, and accepted and made official by such court. This would seem to be conclusive of the proposition,, that the court erred in overruling the objection, and. *844 admitting the map in question to go as evidence before the jury.
For these errors the judgment must be reversed, the verdict set aside, and the case remanded to the court below, that a new trial may be'had, upon which the map, if again offered in evidence, is to be excluded; and the court, if required, shall instruct the jury in accordance with the views herein expressed.
The other judges concurred in the opinion of Staples, J.
Judgment reversed.